UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, v. HOWARD PINDYCK, Defendant. | CR. NO. 02-295(01) (JRT/RLE) THE OBJECTIONS TO THE PRESENTNECE INVESTIGATION OF HOWARD PINDYCK |

* * * * * * * * * * * *

Defendant, Howard Pindyck, by and through his attorney, Kevin J. Short, makes the following objections to the Presentence Investigation in the above matter.

Page 3, paragraph12 states: “These employees had no professional training or licensure”. It is not true that the employees had no training. All therapists were trained by the doctors before they started helping with the patients. On occasion the insurance companies questioned this. When the inquiring insurance companies were provided the foregoing explanation they acquiesced to the treatment and paid the bills. Furthermore there was no requirement that these employees have licensure. Indeed the majority of such employees in the chiropractic community are unlicensed.

Page 4, paragraph 16 states: “The defendants also signed the names of patients to sign in sheets and intake forms”. Howard Pindyck never signed or authorized anyone to sign a name to a sign in sheet for a patient who then left without getting treatment. Fardowsa Ali informed the FBI “Pindyck would become upset with patients who would sign their name and leave before treatment. Pindyck once threatened to fire Ali if she allowed patients to sign in without receiving treatment.” See April 11, 2002, FBI memorandum of interview with Fardowsa Ali. Another witness, Abdi Imankee told the

Grand jury that Pindyck was very strict regarding the patients trying to sign in and not getting treatment.

Page 4, paragraph 18 states: "Pindyck would often instruct clerks how many treatments they needed to bill for a particular patient to ensure that the bills met the monetary threshold of the case." Mr. Pindyck never instructed the billing personnel to bill a certain amount to meet a monetary threshold.

Page 4, paragraph 20 states: "If the information contained in the half sheet or full sheet was insufficient, Pindyck instructed billing clerks to bill whatever had been billed previously". This is not true. The half sheets were designed to help the doctor see where the patient had pain, by the use of the shading in the stick figure. They were also designed to help with communication when the translators were busy with other patients. The half sheets were not intended to be used for billing and Mr. Pindyck did not direct anyone to use them for that purpose.

Page 4, paragraph 21 states: "It was determined that in many cases the information contained on the half sheets was dramatically different than what was billed to the insurance company." The half sheets were not used for the billing process; therefore the therapists and doctors did not always fill out all the information on the sheets. The clinics use of the half sheets was inconsistent because they were mainly used to assist the Doctors with the non-English speaking patients. These patients would fill out on the stick figure the area they were having pain. This would allow the Doctor to know where to treat them without speaking their native language. On subsequent visits the non-English speaking patient would be treated based upon the prior half sheet. Because the half sheets ha no billing purpose, there was noeffort to fill out a new half sheet for

each visit.

Page 10, paragraph 50: Defendant objects to the two level "role" enhancement proposed. The government has joined in this objection.

Page 16, paragraph 90: The default judgment for $5,400 was entered against Mr. Czichray and not Mr. Pindyck. Mr. Pindyck was dismissed from the litigation.

Finally, Mr. Pindyck objects to the $402,000 loss computation contained in the Presentence Investigation at paragraphs 40 and 105.

The defense has retained Joel Wulff, a former executive director of the Minnesota Board of Chiropractic Examiners who is a licensed chiropractor who sometimes performs code reviews for the insurance industry. Dr. Wulff's review of the government's audit is in a nearly final draft. Generally speaking he concludes that the government audit performed by out of state Registered Nurses with limited Chiropractic knowledge is invalid for the following reasons:

1) The government audit is based on the faulty assumption that all patient visits billed following an Independent Medical Exam recommendation for cutoff are fraudulent.

2) The government audit is erroneous because it has an overly broad definition of "fraud". For instance, Dr. Wulff takes issue with the government auditor's contention that patient visits that went beyond the timelines contained in certain chiropractic standards was fraudulent.

3) The government auditors reach erroneous conclusions because they make faulty assumptions relative to some of Defendants' record keeping, e.g. sign in sheets, bubble sheets and dates of service sheets.

4) The government auditors erroneously rely on treatment protocols established by the Minnesota Chiropractic Association's Standards of Practice in arriving at their conclusions of fraud. Dr Wulff points out that the treatment protocols over all are designed to be indicators of when treatment should be questioned, not when it should have been completed.

Mr. Pindyck requests a hearing on this issue. The defense contends that the government cannot meet its burden of proving this loss. The defendant will provide the government with a final report form Dr. Wulff in advance of the date set for the sentencing hearing. Defendant only intends to call Dr. Wulff and anticipates that his direct testimony will take approximately one hour.

Dated: September 26, 2006.

Respectfully submitted,

s/Kevin J. Short
Kevin J. Short
Attorney for Defendant
150 South Fifth Street #3260
Minneapolis, MN 55402
Tel: (612) 333-9006
Attorney No. 100572